Commonwealth *v.* Cooper et al., Appellants.

478

480

Argued December 11, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Philip D. Lauer* and *Daniel E. Cohen*, with them *Seidel and Cohen*, for appellants.

*John E. Gallagher*, First Assistant District Attorney,

and *Charles H. Spaziani*, District Attorney, submitted a brief for Commonwealth, appellee.

OPINION BY HOFFMAN, J., April 22, 1976:

Appellants were convicted of trafficking in narcotics, possession of narcotics,[1] and conspiracy.[2] Initially, appellants contend that the evidence presented at trial was insufficient to convict. Further, appellants challenge the introduction of evidence obtained pursuant to: (1) a New York wiretap; (2) eavesdropping at the door of appellant Harold Davis' motel room; (3) a warrantless search of a trailer rented by appellant Arthur Cooper; and (4) search warrants secured subsequent to the warrantless search. Finally, appellants contend that the court en banc erred in holding that the trial court's refusal of their request for pre-trial statements and reports of Commonwealth witnesses was "harmless error."

We hold that the evidence presented was sufficient to convict appellants of the crimes charged and, therefore, we affirm the lower court's denial of appellants' motion in arrest of judgment. However, we disagree with the lower court's conclusion that the failure to provide appellants with the pre-trial statements and reports was "harmless error." Thus, we reverse and remand for a new trial. Because appellants may be retried, we must consider the claim that evidence obtained in violation of the Fourth Amendment was introduced at trial. However, we affirm the lower court's holding that the evidence in question was properly admitted.

The following facts led to appellants' arrest and conviction. From January 8, through March 8, 1972, the New York State Police placed a wiretap on appellant Davis' telephone pursuant to a warrant procured on

---

1. The Drug, Device and Cosmetic Act, Act of 1961, Sept. 26, P.L. 1664, §4(q); 35 P.S. §780-4(q) (repealed June 14, 1972).

2. Act of 1939, June 24, P.L. 872, §302; 18 P.S. §4302.

January 7, 1972 by the Rensselaer County, New York District Attorney. On February 22, 1972, the New York State Police notified Trooper John Schafer of the Bethlehem Barracks of the Pennsylvania State Police that Davis would be flying to the Allentown-Bethlehem-Easton (ABE) airport and requested surveillance because Davis was believed to be involved in narcotics traffic. The Pennsylvania State Police followed appellant from the ABE airport by helicopter and by automobile during his entire stay in Pennsylvania. Davis was observed talking to a man later identified as Anthony Romano. No arrests resulted from this surveillance.

On February 29, 1972, Trooper Joseph Kocevar, one of the officers involved in the surveillance of the previous week, observed Davis driving east on Route 22. Trooper Kocevar followed Davis to a motel in Hanover Township, Northampton County, where Davis registered to room 120 under an assumed name. Trooper Kocevar radioed for assistance, and the police began a "stake-out." Several officers assumed positions on the roof of the motel, while others waited in the motel office and in the motel parking lot. Troopers Thomas Marchetti, Robert Gerken, and John Schafer received permission from the motel manager to occupy room 118, which was adjacent to room 120. Trooper Marchetti opened the double door on his side connecting room 118 with room 120 and sat in a chair with his head, at times, against the door of room 120. He used no mechanical devices to amplify the sound. Surveillance continued in this manner from 2:30 p.m. on February 29 until 7:00 the next morning.

During the course of Trooper Marchetti's vigil, he wrote down all of Davis' conversations and movements.[3] At 5:10 p.m., Davis called the desk and inquired whether there were any messages. At 5:30 p.m., Davis left his

---

3. Trooper Marchetti's account of Davis' conversations at trial differed slightly from the version given at the suppression hearing. All references will be to the testimony given at the suppression hearing.

room and returned at 6:10 p.m. At 7:15 p.m., and 10:15 p.m., Davis again called the desk for messages. At 1:18 a.m., Marchetti heard Davis talking on the telephone: "Yeah. How you feeling? That's too bad. Having trouble with the trailer. You will be here by daybreak. Good. Well, I'll be leaving here and I'll be back before you get here. Room 120, right? Okay. See you then."

Shortly afterwards, Davis placed a call and told the other party that his friend was having difficulty getting to the motel, and that he would let him know if he, Davis, was going to be late. He asked, "How did the show go?" "Yeah... No kidding.... Any buys?... How big an order?... Oh, boy...." After more conversation, Davis hung up. Then, at 6:55 a.m., a call came to the room: "Yeah.... Where you at?... Gulf Station.... Just come in the parking lot and park trailer in front of motel and come to Room 120, all right?"

At 7:02 a.m., the officers heard a knock at the door of room 120, and Marchetti heard the following exchange:

"Davis: 'How you feeling?'

"Cooper: 'I had to park on side. Lot full.'

"Davis: 'You do what you want. Go home. Get some sleep. Show doing terrible. Not going back. We'll talk later. Let's get the grass [marijuana] to Tony.'

"Cooper: 'Why don't you come with me?'

"Davis: 'Let's keep this in separate cars.' "

The appellants left the room; the officers in room 118 followed. When the appellants were approximately 10 to 15 feet from their rental trailer, the police converged and arrested them. Approximately eleven officers were involved in the arrest. The officers warned appellants of their rights and searched them. One of the officers removed two keys from appellant Cooper's pocket. As the officers approached the trailer, the distinct aroma of marijuana emanated from the trailer. While appellants were held at gunpoint, two troopers opened the trailer and looked inside. The officers saw forty-five duffel bags, one of which was open enough for the officers to see that

it contained marijuana. In all, the marijuana weighed approximately 1,200 pounds.

After the officers viewed the contents of the trailer, they locked the doors and set up a stake-out. Trooper Gerken then went to a district magistrate and applied for search warrants for the car, the trailer, and the motel room. The warrant affidavit recited the following facts: that appellants were arrested by the affiant for possession of marijuana, that affiant smelled a strong odor of marijuana emanating from the trailer, that one of the appellants was the driver of the trailer, that two keys taken from one of the appellants fit the trailer, and that the affiant opened the trailer and saw marijuana. The magistrate issued the warrant, and the officers conducted a thorough search of the motel room, the car, and the trailer. In addition to the marijuana, the police seized a rental contract listing appellant Cooper as the lessee.

On January 29, 1973, the court denied appellants' motions to suppress all physical evidence and oral statements.[4] After a trial on November 14-16, 1973, a jury found appellants guilty on all counts. Motions for a new trial and in arrest of judgment were denied by the court en banc, one judge dissenting,[5] on January 7, 1975. On April 23, 1975, appellant Harold Davis was sentenced to serve a term of 18 to 36 months' imprisonment and appellant Arthur Cooper was sentenced to serve a term of 9 to 24 months' imprisonment. This appeal followed.

## I. Sufficiency of the Evidence

Appellants contend that the evidence was insufficient to prove trafficking, possession and conspiracy.

---

4. Appellant Cooper reportedly gave a complete confession to police, but this was not introduced at trial. It is, therefore, not before us.

5. PALMER, P.J., dissented from the court's opinion on the issue of harmless error.

When the offense of trafficking in a controlled substance is charged, the Commonwealth must establish that the defendant was engaged in the commerce, trade or sale of a controlled substance. *Commonwealth v. Hill*, 236 Pa. Superior Ct. 572, 346 A.2d 314 (1975). See also 87 C.J.S. *Traffic*. The Commonwealth may sustain its burden by proving circumstances which enable the factfinder to reasonably infer that the defendant was engaged in trafficking.

"When the illegal possession of contraband is charged, the evidence must establish that the appellant had a conscious dominion over the contraband. Commonwealth v. Davis, 444 Pa. 11, 280 A. 2d 119 (1971)." *Commonwealth v. Fortune*, 456 Pa. 365, 368, 318 A.2d 327, 328 (1974). Absent literal possession by an individual, the Commonwealth may sustain its burden by proving joint constructive possession, which requires a showing that the defendant had the power to control and the intent to exercise that control. *Commonwealth v. Townsend*, 428 Pa. 281, 237 A. 2d 192 (1968); *Commonwealth v. Griffin*, 230 Pa. Superior Ct. 425, 326 A. 2d 554 (1974). Thus, if the Commonwealth proves these two elements, the factfinder may reasonably infer possession.

Lastly, appellants were convicted of conspiracy to do an unlawful act. "The elements of conspiracy to do an unlawful act are a combination of two or more persons, with criminal intent or corrupt motive, to do a criminal or unlawful act, or an act not in itself unlawful, by criminal or unlawful means: Com. v. Gaines, 167 Pa. Superior Ct. 485, 75 A. 2d 617." *Commonwealth v. Neff*, 407 Pa. 1, 6, 179 A. 2d 630, 631 (1962), quoting *Commonwealth v. Horvath*, 187 Pa. Superior Ct. 206, 144 A. 2d 489 (1958). A conspiracy may be inferentially established by showing the relations, conduct, or circumstances of the confederates, which demonstrate a unity of purpose to accomplish an unlawful act. *Commonwealth v. Neff*, supra.

"In determining whether the evidence is sufficient in

law to prove that a defendant is guilty beyond a reasonable doubt of the crime or crimes charged, we must, after a verdict of guilty, accept as true all of the evidence, direct or circumstantial, and all *reasonable* inferences arising from the evidence, upon which the trier of facts could properly have based the verdict. *Commonwealth v. Malone*, 444 Pa. 397, 281 A. 2d 866 (1971); *Commonwealth v. Petrisko*, 442 Pa. 575, 275 A. 2d 46 (1971)." *Commonwealth v. Fortune*, supra at 367, 318 A. 2d at 328. Evaluated in this light, the testimony at trial amply demonstrated that appellants were engaged in trafficking in a controlled substance. Appellant Davis, a resident of New York State, registered into a motel room under a fictitious name. He was overheard speaking on a telephone to a person who was to meet him at the motel, but was having trouble with a trailer. He agreed to meet the person with the trailer early the next morning in room 120 of the motel. Next, the police heard Davis speak to another person on the telephone and inform that person that his friend with the trailer might be delayed. He, then, inquired about the "show" (contextually, "show" appears to mean drug transaction) and the number of "buys" (a reference to drug sales). He asked, "How big an order?" During the next call overheard by Trooper Marchetti, shortly before the arrest, Davis directed the man with the trailer to the parking lot of the motel.

Seven minutes after this call, the officers observed a trailer enter the motel lot. The driver, appellant Cooper, went to Davis' room and informed Davis of the location of the trailer. Davis told Cooper, "Let's get the grass [marijuana] to Tony." Presumably, "Tony" meant Anthony Romano, the man who met with Davis the week before. They agreed to travel in separate cars to make the delivery, and then left the room. They were arrested 10 to 15 feet from the trailer. Cooper had keys to the trailer and a lease agreement for the trailer which listed him as lessee. The trailer contained 1,200 pounds of marijuana.

The evidence of appellants' participation in a distributive chain is overwhelming. The jury was justified in inferring that appellants were engaged in merchandising and transporting marijuana, and, therefore, properly convicted them of trafficking.

Similarly, the Commonwealth's evidence of possession was more than sufficient to convict, despite the fact that neither appellant literally possessed the marijuana. Appellant Cooper had the power to control the contraband because he was both the lessee and the driver of the vehicle which contained the marijuana. His intent to exercise that control was shown by his conversation with Davis in which he agreed to deliver the marijuana to a third person. Thus, he cannot claim that he was unaware of the presence of the contraband. Appellant Davis had the power to control the contraband because he directed Cooper to proceed to the motel and told Cooper to get the "grass to Tony." His intent to exercise that control was shown by his agreement to participate in the delivery of the marijuana to the next person in the distributive chain, and his proximity to the marijuana at the time of arrest. The evidence precludes the inference that Davis was unaware of the contents of the trailer.

Finally, the evidence was sufficient to convict appellants of conspiracy. The unlawful act, possession and delivery of a controlled substance, was established. Appellants' words and conduct clearly manifested an agreement to act in concert to accomplish the unlawful act. There is no question of appellants' criminal intent. We, therefore, hold that the court's denial of the motions in arrest of judgment was proper.

## II. Search and Seizure Claims

Appellants first contend that unlawful electronic surveillance conducted in New York contributed to their arrest and to the search of the trailer. They argue that

the Commonwealth failed to show the legality of the New York wiretap and that, even assuming the legality of the New York surveillance, the evidence should be suppressed because of the strong policy of the Commonwealth against the use of wiretapping equipment.

Initially, the question of whether any conversations obtained by the New York police from their surveillance would be admissible is not before us. The issue presented is, whether, assuming some illegality or violation of public policy of the Commonwealth, the arrest or evidence seized in Pennsylvania was "come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

In the instant case, it is undisputed that the police knew Davis would be in Pennsylvania a week before his arrest and the reasons for his presence. The source of this knowledge was the report by the New York State Police, who ostensibly secured their information from a wiretap of Davis' home telephone. However, it was purely coincidence that Trooper Kocevar happened to see Davis on February 29. The Pennsylvania State Police, based on their knowledge of Davis' reported involvement in interstate drug trade, established their own surveillance. This surveillance netted sufficient independent information for the belief that the appellants were presently engaged in trafficking in marijuana to justify their placing appellants under arrest and to secure the warrants to search the vehicles and the motel room. We hold, therefore, that whatever taint may have existed as a result of wiretaps conducted in New York, it was dissipated by the time which elapsed between the original tip provided by the New York police and by the subsequent substantial, independent investigative activity by the Pennsylvania police.

Appellants next contend that the court below should have suppressed the conversations overheard by the

police and all physical evidence seized as a result of the eavesdropping conducted at the door of his room.

"A hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office. United States v. Jeffers, 342 U.S. 48 [72 S.Ct. 93, 96 L.Ed. 59]. The Fourth Amendment can certainly be violated by guileful as well as by forcible intrusions into a constitutionally protected area. Gouled v. United States, 255 U.S. 298 [41 S.Ct. 261, 65 L.Ed. 647]. And the protections of the Fourth Amendment are surely not limited to tangibles, but can extend as well to oral statements. Silverman v. United States, 365 U.S. 505 [81 S.Ct. 679, 5 L.Ed. 2d 734]." *Hoffa v. United States*, 385 U.S. 293, 301 (1966). At the same time that the United States Supreme Court freed the Fourth Amendment from its moorings in the law of property with the familiar words, "... the Fourth Amendment protects people, not places ...." *Katz v. United States*, 389 U.S. 347, 351 (1967), it went on to qualify this principle with, "[w]hat a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection." Id. The Supreme Court has noted that "[t]he risk of being overheard by an eavesdropper ... is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak." *Hoffa v. United States*, supra at 303, quoting with approval from Mr. Justice BRENNAN's dissent in *Lopez v. United States*, 373 U.S. 427, 465 (1963).

"It has long been settled that objects falling in the plain view of an officer *who has a right to be in the position to have that view* are subject to seizure and may be introduced in evidence." *Harris v. United States*, 390 U.S. 234, 236 (1968) (emphasis added). Those federal courts which have addressed the question presented by appellants have uniformly held "... that conversations carried on in a tone of voice quite audible to a person standing outside the home are conversations knowingly exposed to the public." *United States v. Llanes*, 398 F.2d

880, 884 (2d Cir. 1968), *cert. denied* 393 U.S. 1032 (1969). See also *United States v. Ortega,* 471 F.2d 1350 (2d Cir. 1972); *Williams v. United States,* 463 F.2d 1183 (2d Cir. 1972); *United States v. Wilkes,* 451 F. 2d 938 (2d Cir. 1971); *United States v. Fuller,* 441 F.2d 755 (4th Cir. 1971); *Ponce v. Craven,* 409 F.2d 621 (9th Cir. 1969); *United States v. Perry,* 339 F.Supp. 209 (S.D.Cal. 1972).

We find that no Fourth Amendment violation occurred in the instant case when an officer, lawfully entitled to be in the adjacent room, overheard appellant's conversations unaided by any mechanical or electronic amplification device. Therefore, we hold that the court below properly admitted the conversations overheard by the officers and the evidence seized as a result of the eavesdropping.

Lastly, appellants contend that the evidence seized pursuant to the warrants should have been suppressed because probable cause for the issuance of the warrants was supplied by a warrantless search of appellant Cooper's person and the vehicle he was driving.

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is *'per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions.' " *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973) (Citations omitted). A search incident to a lawful arrest is one such exception. An arresting officer may search the person arrested, in order to remove any weapons and to seize evidence on the arrestee's person, and may search the area into which the arrestee might reach in order to secure a weapon or destroy evidence. *Chimel v. California,* 395 U.S. 752 (1969). See also *Commonwealth v. Smith,* 443 Pa. 151, 277 A. 2d 807 (1971); *Commonwealth v. Cockfield,* 431 Pa. 639, 246 A. 2d 381 (1968); *Commonwealth v. Harris,* 429 Pa. 215, 239 A. 2d 290 (1968). "Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous

search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. Weeks v. United States, 232 U.S. 383, 392 [34 S.Ct. 341, 344, 58 L.Ed. 652] (1914); Agnello v. United States, 269 U.S. 20, 30 [46 S.Ct. 4, 5, 70 L.Ed. 145] (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, Carroll v. United States, supra [267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)], 267 U.S., at 158 [45 S.Ct. at 287, 69 L.Ed. 543], and, to an extent depending on the circumstances of the case, to the place where he is arrested, Agnello v. United States, supra, 269 U.S. at 30 [46 S.Ct. at 5, 70 L.Ed. 145], Marron v. United States, 275 U.S. 192, 199 [48 S.Ct. 74, 77, 72 L.Ed. 231] (1927); United States v. Rabinowitz, 339 U.S. 56, 61-62 [70 S.Ct. 430, 433, 94 L.Ed. 653] (1950)." *Preston v. United States,* 376 U.S. 364, 367 (1964).

A second exception to the warrant requirement exists in cases involving searches of automobiles because of the ease with which evidence may be moved from the locality. "For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motorcar. See Carroll v. United States, supra, 267 U.S. at 153 [45 S.Ct. at 285, 69 L.Ed. 543]. But even in the case of motorcars, the test still is, was the search unreasonable." *Preston v. United States,* supra at 366, 367. See also, *Commonwealth v. Cockfield,* supra; *Commonwealth v. Scull,* 200 Pa. Superior Ct. 122, 186 A. 2d 854 (1962).

In the instant case, the officers had just arrested two men, whom they reasonably believed to be engaged in a large interstate shipment of marijuana. One of the appellants was the driver of a car hauling a 15 foot trailer. The officers stated at the suppression hearing that they had no way of knowing whether an armed confederate might not be hiding in the trailer. They checked inside, assuaged their suspicions, and then secured the warrants for searches of the trailer, the car,

and the motel room. This limited intrusion, under the circumstances, can hardly be said to be unreasonable.

Even assuming, *arguendo*, the illegality of the police conduct, the fact remains that the officers secured warrants before conducting a more extensive search of the vehicles and the motel room. It is clear that, if evidence is seized pursuant to a warrant which rests on facts from a source wholly independent of an unlawful entry that establish probable cause, the evidence will not be suppressed simply because of the unlawful entry. *Commonwealth v. Nicholls*, 207 Pa. Superior Ct. 410, 217 A. 2d 768 (1966). If facts are presented to the magistrate which are sufficient to sustain the warrant after excluding those facts secured pursuant to an unlawful search, then we may sustain the warrant.

In the instant case, the officers told the magistrate that appellants had been taken into custody for trafficking in a controlled substance, that Cooper had been observed driving the vehicles in question, that officers smelled a strong odor of marijuana emanating from within the trailer, and that the appellants were apprehended near the trailer. Issuance of the warrant, even without the evidence secured by opening the trailer, would have been entirely proper,[6] and we will, therefore, not suppress the evidence secured pursuant to the warrants.

## III. Access to the Police Reports

Appellants contend that they are entitled to a new trial based on the refusal of the trial court to order the Commonwealth to supply defense counsel with police

---

6. Because the warrant in the instant case was issued before the effective date of Rule 2003, Pa.R.Crim.P., the officers were permitted to supplement the information contained in the warrant affidavit with testimony.

reports prepared prior to trial by various officers.[7]

The law on the subject is well-summarized in *Commonwealth v. Robinson*, 229 Pa. Superior Ct. 131, 136, 324 A.2d 441, 444 (1974): "There is no bar ... to requesting discovery of a witness's written statements during trial. *Commonwealth v. Kontos*, 442 Pa. 343, 276 A.2d 830 (1971). In fact, 'relevant, pre-trial statements of witnesses in the possession of the Commonwealth must be made available to the accused, upon request, during the trial.' *Commonwealth v. Morris*, 444 Pa. 364, 366, 281 A.2d 851 (1971). *See also Brady v. Maryland*, 373 U.S. 83 (1963). This rule extends to reports made by police officers who testify as witnesses. *Commonwealth v. Swierczewski*, 215 Pa. Superior Ct. 130, 257 A.2d 336 (1969)." Although *Robinson* requires that police reports are to be made available to a defendant subject only to a review by the trial judge for relevancy, it would require that counsel make timely request for such reports and suggests that, at the very latest, the request should be made "following the officer's answers to questions on cross-examination concerning the existence of the report." *Commonwealth v. Robinson, supra* at 136-137, 324 A.2d at 445.

In the instant case, the court *en banc* held that it was error for the trial court to deny defense counsel's repeated, timely requests for these reports; however, a divided court held that the trial court's denial of the reports to appellants was harmless in view of the overwhelming evidence of guilt. We agree that it was error for the lower court to deny defense counsel these statements.

In order for an error of this kind to be held harmless, "the Commonwealth must now demonstrate, beyond a

---

7. Because we reverse the judgment of sentence and award a new trial, it is unnecessary to reach appellants' contention that it was error for the trial court to permit the jury to view 15 of the 45 bags of marijuana.

reasonable doubt, that there was no reasonable possibility that the evidence complained of might have contributed to the conviction." *Commonwealth v. Pearson,* 427 Pa. 45, 49, 233 A.2d 552, 554 (1967). The difficulty presented by the instant case is that the reports of the officers are not part of the record; and, it would clearly be improper for us to consider anything which does not appear in the record. *Commonwealth v. Young,* 456 Pa. 102, 317 A.2d 258 (1974). Without knowing the content of these reports, we cannot hold harmless the error of denying defense counsel's requests to have access to the police reports.

We, therefore, reverse the judgment of sentence and remand for a new trial.

_____

DISSENTING OPINION BY CERCONE, J.:

I agree with the majority's treatment of the substantive issues of this appeal, but I find no sufficient reason to grant a new trial herein simply because the record does not include the police officers' reports of their investigation of the instant crimes. We have a situation where interstate police cooperation, coupled with a thorough and costly investigation, has led to the red-handed capture of appellants with more than one-half ton of marijuana in their possession. Already more than three years have passed since appellants were arrested, undoubtedly because of the complexities of this case; yet, the majority would put the Commonwealth through the expense of re-trying these individuals despite the fact that a simple hearing would supplement the record so that the "harmless error" question could be readily determined. It must appear to all that it is extremely unlikely that anything in the police reports would raise a reasonable doubt about appellants' guilt, given the facts of this case.[1] Therefore, I would remand for a further

_____

1. Even the majority opinion asserts that, "The evidence of appellants' participation in a distributive chain [of marijuana] is overwhelming."

hearing in connection with appellants' post-trial motions wherein the hearing court could review the police reports or testimony concerning their contents (in camera if necessary), and resolve the question of whether reversible error occurred when the trial court refused to order the Commonwealth to produce them. Ordering a new trial squanders the valuable time and efforts of the police, the district attorney's office and the trial court, and wastes the taxpayers' money.

VAN DER VOORT, J., joins in this dissent.