590 A.2d 302

**COMMONWEALTH of Pennsylvania**

v.

**Robert L. BRUNDIDGE, Appellant.**

Superior Court of Pennsylvania.

Submitted April 4, 1990.

Filed April 15, 1991.

Todd A. Dorsett, Waynesboro, for appellant.

Gregory Lensbower, Asst. Dist. Atty., Chambersburg, for Com., appellee.

Before CIRILLO, President Judge, and BECK and HESTER, JJ.

BECK, Judge:

The issue presented is whether appellant's constitutional rights were violated when the police conducted a warrantless search of a jacket that was covered with plastic and hanging in a closet in a motel room one-half hour after check-out time. We conclude that, although the police entry and search of the motel room did not infringe on Fourth Amendment rights, the additional governmental intrusion into appellant's enclosed personal effects violated his constitutionally safeguarded expectations of privacy. Since we find that the trial court erred in refusing to suppress the evidence uncovered in this unreasonable

search, we reverse the judgment of sentence and remand for a new trial.

## I.

In reviewing a trial court's denial of a motion to suppress, we consider the evidence of the prosecution, and so much of the evidence of the defense as, read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Kean*, 382 Pa.Super. 587, 590, 556 A.2d 374, 375 (1989); *Commonwealth v. Lemanski*, 365 Pa.Super. 332, 341–344, 529 A.2d 1085, 1089–90 (1987). Viewed in this light, the facts of this case are as follows.

On August 25, 1987, appellant Robert L. Brundidge registered at the Greencastle Travelodge Motel for one night for a party of two: himself and his companion James Jackson. Appellant listed his home address as Haines City, Florida. Seana Rhodes, the front desk clerk, registered appellant in room 307. Pursuant to motel policy, Rhodes ordinarily informed motel guests that check-out time is twelve noon. There was also a sign displayed at the front desk informing the guests that check-out time is twelve noon.

Several motel employees observed appellant and Jackson together on the evening of August 25. They left the motel at approximately twelve midnight, and did not return that night. The following day, at approximately twelve noon, Dorcas Sheffield, the executive housekeeper, telephoned room 307 pursuant to usual motel procedure, to determine whether the occupants wished to retain the room for a second night. When she received no answer, she entered the room to prepare it for the next guest. She found that the beds had not been slept in the previous night. On one of the beds she found a diagram of the motel floor plan labelled "front desk" with the handwritten name "James Q. Jackson" on it. On a table she found several one-inch square clear plastic bags.

Ms. Sheffield was alarmed by the diagram in particular because only two weeks before, a motel guest had perpetrated an armed robbery of the front desk. She went to the motel manager, Norman Reed, to report what she found in the room. State Trooper Gary Bopp, an undercover narcotics agent, was in the manager's office at the time investigating an unrelated matter. The manager and Trooper Bopp went with Ms. Sheffield to room 307. Trooper Bopp waited outside while Sheffield and Reed investigated. After Reed determined that no other persons were in the room, he asked Trooper Bopp to enter. At approximately 12:20 p.m., Trooper Bopp entered room 307. He observed in plain view the diagram and the small plastic bags, which he recognized as the kind of bags used for packaging small quantities of controlled substances. He proceeded to search the room. In the only closet, he found a jacket with a protective plastic bag over it. He searched the jacket, and in a pocket, he found a plastic bag inside another plastic bag filled with a white powder which was later determined to be 206.6 grams of pure cocaine. He removed a small sample of the powder for field testing and replaced the bag in the jacket pocket. Field testing erroneously indicated that the substance was methamphetamine. The trooper then telephoned the district attorney's office regarding the need for a search warrant, and telephoned police headquarters for assistance.

At 12:45 p.m., appellant and Jackson returned to the motel. Shortly thereafter, appellant registered for a second night. The two were kept under surveillance by state police while Trooper Bopp obtained a search warrant. At approximately 3:00 p.m., appellant and Jackson attempted to exit the motel. State police officers ordered them to halt. Appellant stopped, but Jackson attempted to flee and was shot by an officer. Trooper Bopp returned with search warrants for the motel room and appellant's and Jackson's cars. He seized the diagram, plastic bags, and bag of cocaine he previously found. Trooper Paul searched both appellant's and Jackson's cars. From Jackson's car, he seized an

empty "Skoal" chewing tobacco can containing a white residue and a razor blade, an unregistered gun, and three rounds of ammunition. He found no incriminating evidence in appellant's car.

Appellant was arrested and charged with possession of a controlled substance with intent to deliver[1] and conspiracy.[2] After his arrest, and after he was given *Miranda* warnings, appellant stated to police that the cocaine found in the jacket was not his, but Jackson's. At the time, police were under the misapprehension that the substance found in the jacket was methamphetamine. He also told police that he knew Jackson was selling drugs in Hagerstown, and that he was providing him with a place to stay and transportation to and from Hagerstown.

Appellant and Jackson were tried separately. Appellant filed a pre-trial motion to suppress the cocaine, which was denied. He was subsequently found guilty of both charges and sentenced to a term of five to ten years imprisonment. Appellant filed a timely notice of appeal from judgment of sentence.

Appellant raises two issues on appeal: (1) whether the admission of the cocaine into evidence violated his constitutional rights; and (2) whether there was sufficient evidence presented at trial to sustain his conviction of both charges. We conclude that appellant's suppression claim has merit and warrants the grant of a new trial.[3]

1. 35 Pa.Stat.Ann. § 780–113 (Purdon 1977).
2. 18 Pa.Cons.Stat.Ann. § 903 (Purdon 1983).
3. Appellant's challenge to the sufficiency of the evidence has no merit. The test for sufficiency of the evidence in a criminal case is whether the Commonwealth presented sufficient evidence to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Hughes*, 521 Pa. 423, 429–431, 555 A.2d 1264, 1267 (1989). In making the determination this court views the evidence in the light most favorable to the Commonwealth as the verdict winner, and accepts as true all evidence and all reasonable inferences therefrom, which, if believed, could properly support the verdict. *Id.* In passing upon the sufficiency of the evidence, we consider all evidence actually received at trial, even if that evidence was improperly admitted. *Commonwealth v. Cohen*, 489 Pa. 167, 177–178, 413 A.2d 1066, 1072 (1980), *cert. denied* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980); *Com-*

## II.

 In support of his Fourth Amendment claim, appellant argues that he retained a constitutionally protected privacy interest in both the motel room and all its contents even though he concedes that check-out time had passed. In so arguing, appellant correctly focuses on what is clearly, in this context, the fundamental Fourth Amendment concern, i.e., the protection of legitimate privacy interests.[4] We disagree with appellant's overbroad and unsupported conclusion that, despite the expiration of his rental period in the motel room, his privacy interests in that room warrant continued constitutional protection. On the other hand, the

monwealth v. Pankraz, 382 Pa.Super. 116, 119–120, 554 A.2d 974, 976 (1989), appeal denied, 522 Pa. 618, 563 A.2d 887 (1989).

In order to uphold appellant's conviction for possession of a controlled substance with intent to deliver, the Commonwealth must have come forward with evidence sufficient to prove that appellant possessed a controlled substance, and did so with the intent to deliver it. Commonwealth v. Cardona, 316 Pa.Super. 381, 388–389, 463 A.2d 11, 15 (1983). The intent to deliver may be inferred from the amount of cocaine in this case. Commonwealth v. Schilling, 312 Pa.Super. 43, 50–51, 458 A.2d 226, 230 (1983). We are further satisfied that the Commonwealth presented sufficient evidence of possession under Commonwealth v. Macolino, 503 Pa. 201, 469 A.2d 132 (1983). See also Commonwealth v. Carroll, 510 Pa. 299, 507 A.2d 819 (1986); and Commonwealth v. Mudrick, 510 Pa. 305, 507 A.2d 1212 (1986).

A conviction for criminal conspiracy may stand provided the evidence shows beyond a reasonable doubt that appellant and his conspirator (1) entered into an agreement to do an unlawful act, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. 18 Pa.Cons.Stat.Ann. § 903 (Purdon 1983). From the totality of the circumstances, especially from appellant's own statements to the police to the effect that he was driving Jackson to and from Hagerstown so that Jackson could sell drugs, the jury could reasonably infer that an agreement existed between appellant and Jackson to perform an unlawful act, and that appellant and Jackson shared a criminal intent to possess and deliver the cocaine. We have already determined that from the evidence, the jury could find that appellant possessed a controlled substance with intent to deliver. This satisfies the requirement of an overt act. See Commonwealth v. Lanager, 360 Pa.Super. 578, 585–587, 521 A.2d 53, 57 (1987). We therefore find sufficient evidence of conspiracy beyond a reasonable doubt.

4. "It is now well recognized that, in order to challenge successfully a warrantless search, the challenger must have a legitimate expectation of privacy in the area or property searched...." Commonwealth v. Cihylik, 337 Pa.Super. 221, 226, 486 A.2d 987, 990 (1985).

extinguishment of appellant's privacy interest in the motel room did not deprive him of all Fourth Amendment protection for the concealed contents of his personal effects within that room. Our conclusion is supported by settled constitutional principles and case law.

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Over years of evolving Fourth Amendment jurisprudence, a fundamental precept has emerged and that is, "the protection of the Fourth Amendment depends not upon a property right in the invaded place but whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). In order to invoke the protection of the Fourth Amendment, the expectation of privacy which allegedly has been invaded by government action must be "justifiable," "legitimate" and one which "society is prepared to recognize as 'reasonable'." *Katz v. United States*, 389 U.S. 347, 360–361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (Harlan, J., concurring). The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right. *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 525–526 n. 7, 104 S.Ct. 3194, 3199–3200 n. 7, 82 L.Ed.2d 393 (1984). Indeed, as Mr. Justice Powell emphasized in his concurring opinion in *Rakas*, "it is not enough that an individual desired or anticipated that he would be free from governmental intrusion." Rather, he concluded, "[t]he ultimate question is whether one's claim to privacy from governmental intrusion is reasonable in light of all the surrounding circumstances." *Rakas v. Illinois*, 439 U.S. at 151–152, 99 S.Ct. at 435 (Powell, J., concurring). Finally, it has been noted by the United States

Supreme Court that, "[d]etermining whether an expectation of privacy is 'legitimate' or 'reasonable' necessarily entails a balancing of interests." *Hudson v. Palmer*, 468 U.S. at 527, 104 S.Ct. at 3200. Our conclusion in appellant's case turns upon these general considerations.

■ A guest in a hotel or motel has an undeniably legitimate expectation of privacy in his room during the period of time for which it is rented.[5] Fourth Amendment protection extends to a hotel room, paid for and occupied, in much the same way as it does to a citizen's home or office. *See Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *see also Commonwealth v. Cooper*, 240 Pa.Super. 477, 488–489, 362 A.2d 1041, 1049 (1976), *vacated on other grounds*, 468 Pa. 390, 363 A.2d 783 (1976), *cert. denied*, 429 U.S. 1048, 97 S.Ct. 758, 50 L.Ed.2d 763 (1977). The question is whether the same expectation of privacy remains after the rental period has terminated, and assuming it does not, whether the diminished privacy interest extends to all personal property which the renter had secured in his room.

Our research has revealed that the majority of cases confronting this issue hold that, after check-out time, a motel guest cannot claim a legitimate expectation of privacy in the room or in any item in plain view to anyone readying the room for the next occupant. We are persuaded that these cases state the correct position. *See, e.g., United States v. Rahme*, 813 F.2d 31, 34–35 (2d Cir.1987); *United States v. Akin*, 562 F.2d 459, 464 (7th Cir.1977), *cert.*

5. This is not to say that intentional abandonment, and therefore a relinquishment of privacy interests, of rented premises can never be found even if the rental period has not expired. Courts have found premises abandoned and, consequently, privacy rights forfeited although time still remained on the rental arrangement or check-out time had not elapsed. *See United States v. Hunter*, 647 F.2d 566 (5th Cir.1981) (motel room held to be abandoned before check out time when appellant had paid bill in full and left room with key locked inside); *United States v. Akin*, 562 F.2d 459 (7th Cir.1977) (hotel room abandoned when door was left wide open and no luggage remained in room).

*denied,* 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978); *United States v. Parizo,* 514 F.2d 52, 54–55 (2d Cir.1975); *United States v. Croft,* 429 F.2d 884, 887 (10th Cir.1970); *State v. Ahumada,* 125 Ariz. 316, 318, 609 P.2d 586, 588 (1980); *Sumdum v. State,* 612 P.2d 1018 (Alaska 1980). We refuse, however, to extend this reasoning to include all personal and secured property within that room, unless exigent circumstances, abandonment or other convincing circumstances can be shown.

At issue here is the *legitimacy* of appellant's expectation of privacy in a room rented on a transient basis for which one night's rent had been paid and for which the posted check-out time of twelve noon had concededly passed. Our inquiry cannot hinge on whether appellant subjectively desired to retain a privacy interest in the room, as we noted above. Rather we must decide whether, on balance, society is prepared to recognize as legitimate a subjective expectation of privacy in a motel room in which the rental period has ended and the guest's right to occupancy has consequently lapsed. We conclude that a justifiable expectation of privacy cannot continue in the room under such circumstances.

Inherent in this conclusion is the recognition that motels are a business which depend upon maximizing occupancy by paying guests. Once the rental period paid for has expired (as evidenced by the passing of check-out time), management must be free to enter the room and prepare it for re-rental. A guest's expectation of privacy in the room must yield to reasonable efforts by management to ready the room for the next paying occupant. Whatever is evident or uncoverable during the normal course of preparing the room for subsequent occupancy cannot justifiably be the subject of Fourth Amendment claims. *See United States v. Lee,* 700 F.2d 424, 426 (10th Cir.1983) (motel room rented by suspected bank robbers; rental period expired; cash found loose and in a transparent plastic bag secreted under bed held admissible because daily motel housekeeping might

reveal such items and privacy past the rental period cannot be expected).

■ However, although the police entry into the motel room past check-out time raises no cognizable Fourth Amendment claim because appellant no longer had a constitutionally justifiable expectation of privacy in the room, the same cannot be said for the search of the covered jacket's pockets. The factors which led us to conclude that a motel guest's right of occupancy and expectation of privacy in the room necessarily must terminate at check-out time, do not apply to the contents of discrete and concealed personal effects. For while motel personnel must have access to and use of the motel room after the rental period expires, and such should be the reasonable expectation of motel guests, this need does not extend to items of personal luggage or other containers which do not reveal the nature of their contents.[6]

It has long been recognized that what a person "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States,* 389 U.S. at 351–352, 88 S.Ct. at 511. As a result, the Supreme Court, in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) held that although luggage may be outside the home, an individual retained a legitimate expectation that its contents would remain private. The Court was guided by the concept that luggage is intended as a repository of personal effects, in which there is a great privacy interest. This principle was reaffirmed in

---

**6.** As the Supreme Court has cautioned:
> Not all containers and packages found by the police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to 'plain view', thereby obviating the need for a warrant.

*Arkansas v. Sanders,* 442 U.S. 753, 764 n. 13, 99 S.Ct. 2586, 2593 n. 13, 61 L.Ed.2d 235 (1979) (citation omitted).
> Clearly, these exceptions do not apply to the enclosed jacket pocket at issue in the instant case.

*Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), which involved the search of a suitcase removed from a taxicab. In both *Chadwick* and *Sanders,* the Supreme Court refused to extend appellants' diminished expectations of privacy in automobiles to the contents of closed containers carried therein. Similarly, here we decline to extend appellant's lack of privacy interests in the motel room to the personal effects he had secured there.

The factors which weighed in favor of a motel guest's relinquishment of privacy interest in the room do not similarly pertain to his enclosed personal effects. There is no economic or other justification on the part of motel management to examine the contents of it's guests' closed personal possessions, particularly when so short a time had passed since check-out time. Neither motel personnel nor police had reason to conclude that appellant and his companion were not returning for their belongings and had forsaken them in the room.[7] While guests could reasonably expect that their possessions would be removed from a room after check-out time in order to make the room available to another, this expectation would not include wholesale scrutiny of enclosed personal items by motel personnel or police.

In our view this expectation is the very essence of Fourth Amendment protection. Without it, any traveler delayed for unavoidable or innocuous reasons in returning to his hotel room could never feel secure in the knowledge that his private effects were free from government invasion. We

7. The Commonwealth argues that the items left in appellant's motel room were "abandoned" and therefore outside the protection of the Fourth Amendment. We disagree. Under the circumstances of this case, where only a relatively short period of time had elapsed since check-out time, appellant's car remained parked at the motel, the room remained locked, and appellant returned shortly thereafter to register for a second night, it cannot be said that appellant manifested an intent to discard or relinquish his interest in the property left in his room. *See Commonwealth v. Shoatz,* 469 Pa. 545, 553, 366 A.2d 1216, 1219–20 (1976); *Commonwealth v. Perdue,* 387 Pa.Super. 473, 481–483, 564 A.2d 489, 493 (1989), *appeal denied,* 524 Pa. 627, 574 A.2d 68 (1990).

think that the impact of allowing such a search would shake the fundamental "sense of security that is the true concern of the Fourth Amendment's protection of privacy." *United States v. White,* 401 U.S. 745, 787 n. 24, 91 S.Ct. 1122, 1144 n. 24, 28 L.Ed.2d 453 (1971) (Harlan, J., dissenting). Therefore, we hold that motel guests retain a protected privacy interest in the contents of concealed or closed personal effects kept in a room even after check-out has passed.[8]

█ Further we conclude that, under the circumstances of this case, the pocket of the covered jacket inside the room's closet was the type of repository of personal effects to which a legitimate expectation of privacy can and did extend. The covering gave the jacket an additional indicia of a private area, shielded from public access. The Supreme Court has stressed that whether a citizen's enclosed possessions are entitled to Fourth Amendment protection is not dependent on the type of hardware which secures them or the size and sophistication of the container in which they are stored. *See Smith v. Ohio,* 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464, 467 (1990) (the Fourth Amendment protects alike the " 'traveler who carries a toothbrush and a few articles of clothing in a paper bag' and 'the sophisticated executive with the locked attache case.' " *quoting United States v. Ross,* 456 U.S. 798, 822, 102 S.Ct. 2157, 2171, 72 L.Ed.2d 572 (1982); *Arkansas v. Sanders,* 442 U.S. at 762 n. 9, 99 S.Ct. at 2592 n. 9.

Given the fact that appellant retained a legitimate privacy interest in the enclosed jacket and the items contained therein, the search of the jacket should have been accomplished pursuant to judicial warrant issued upon probable cause. The Commonwealth attempts to escape the opera-

---

**8.** We stress that our holding does not mean that a court can never find that a motel guest has relinquished privacy interests in both the motel room *and* in belongings left therein. In another case, additional facts may lead a court reasonably to conclude that a motel guest has relinquished all legitimate expectations of privacy in both the room and articles left in it. Today, we hold simply that a citizen's privacy interest in enclosed personal possessions inside a motel room do not terminate automatically at check-out time.

tion of the Fourth Amendment by suggesting various theories to put this search out of its reach. We find none of these persuasive. For instance, no exigent circumstances existed to justify the warrantless search. The motel manager searched the room and determined that it was unoccupied before the police entered. There was no danger that evidence would be destroyed or removed, nor was there a danger to police or motel personnel. The evidence was not in "plain view," as it was concealed in the jacket and the officer was unaware of it until he performed the search.

■ Moreover, Trooper Bopp's actions do not fall within the good faith exception to the application of the exclusionary rule. In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that the Fourth Amendment exclusionary rule may not apply where evidence is seized in reasonable, good faith reliance on a facially valid but somehow defective search warrant. Here, the illegality at issue was not police reliance on a defective search warrant. No warrant was obtained until after the illegal intrusion occurred. The good faith exception is not applicable here.

■ Finally, we briefly consider whether the motel personnel had authority to consent to a police search of concealed personal effects in the motel room. We conclude that no such authority existed. As our discussion above emphasizes, appellant retained a reasonable expectation of privacy in the jacket secured in the motel room. We know of no theory which would give motel management dominion over the contents of discrete and personal items of luggage and the like of their motel guests. Third party consent search theory is grounded on the premise that the third party possessed common authority over the premises or effects to be searched so as to permit the conclusion that the person asserting the right assumed the risk that the third party would allow the search. *See United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). However, no such conclusion can be reached with respect to enclosed personal effects such as luggage found

in a motel room shortly after check-out time which clearly have not been either abandoned or left open for public access. In such cases "manifestations of retained expectations of privacy by the absent person could [not] be stronger, [n]or the indications of assumed risks of third person permission to inspect, lower." *United States v. Block*, 590 F.2d 535, 541 (4th Cir.1978) (mother's authority to consent to search of son's room did not extend to a search of a locked footlocker in room); *see also United States v. Padron*, 657 F.Supp. 840 (D.Del.1987), *aff'd without op. sub nom., United States v. Rubio*, 857 F.2d 1466 (3d Cir.1988), *cert. denied*, 488 U.S. 974, 109 S.Ct. 512, 102 L.Ed.2d 547 (1988) (authority of driver to consent to search of car does not extend to passenger's luggage).[9]

Based on the foregoing, we conclude that the trial court erred in failing to suppress the cocaine seized from the jacket pocket. Accordingly, we reverse.

Judgment of sentence reversed and the case is remanded for a new trial.

HESTER, J., files a dissenting statement.

HESTER, Judge, dissenting.

I respectfully Dissent.

---

**9.** The record here demonstrates that there was no reasonable basis for the police to believe that motel management had authority to consent to the search of appellant's enclosed personal effects. Under the circumstances of the instant case, the police were not entitled to assume that the manager's authority over the premises extended to the guest's concealed, personal effects. Therefore, those cases which permit police to rely on "apparent authority" for consent to search are distinguishable. *See Illinois v. Rodriguez*, 497 U.S. ——, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).