564 A.2d 564

John CANNIZZARO, Petitioner,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF STATE, BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, State Real Estate Commission, Respondents.

Anthony CANNIZZARO, Petitioner,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF STATE, BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, State Real Estate Commission, Respondents.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1989.

Decided Oct. 6, 1989.

Petition for Allowance of Appeal Denied April 18, 1990.

40

Nicholas Panarelli, Jr., Philadelphia, for petitioner—John Cannizzaro.

Steven Wennberg, State Real Estate Comm'n, Joyce McKeever, Chief Counsel, Bureau of Professional and Occupational Affairs, Velma A. Boozer, Chief Counsel, Dept. of State, Harrisburg, for respondents.

Carmen C. Nasuti, and Joel P. Trigiani, Philadelphia, for petitioner—Anthony Cannizzaro.

Before McGINLEY and SMITH, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Petitioners John and Anthony Cannizzaro have separately appealed from an order of the State Real Estate Commission (Commission) revoking the real estate salesperson's, associate broker's and broker's licenses of John Cannizzaro and the salesperson's license of Anthony Cannizzaro.

On October 27, 1982, John and Anthony Cannizzaro were involved in an altercation with a former salesman, Kenneth Manear, of Park Realty Co., owned by John Cannizzaro. The dispute between the Cannizzaros and Manear centered around Manear's efforts to collect a default judgment he had obtained for commission payments the Cannizzaros allegedly owed him. John Cannizzaro went to Manear's office to confront him regarding harassment of his, Cannizzaro's, parents. Worried for his safety, his brother Anthony and father Frank Cannizzaro followed him to Manear's office. A struggle ensued, during which Manear took from John Cannizzaro the baseball bat he had brought with him, struck Frank Cannizzaro with it and began to choke him. Coming to his father's aid, Anthony Cannizzaro struck Manear on the head with a hammer, to no avail, and ultimately shot Manear three times with the gun he carried for self-protection.

The brothers were convicted of third-degree murder, a felony, on September 27, 1983. John was sentenced to one-to-three years, served one year and was paroled. Anthony was sentenced to five-to-ten years.

The Commission issued complaints against the Cannizzaros under Section 604(a)(14) of the Real Estate Licensing and Registration Act (RELRA), Act of February 19, 1980, P.L. 15, *as amended,* 63 P.S. § 455.604(a)(14). These complaints were later amended to include charges under Section

9124(c)(1) of the Criminal History Record Information Act (CHRIA), 18 Pa.C.S. § 9124(c)(1). Following a hearing at which John Cannizzaro appeared and was represented and which Anthony Cannizzaro permitted to proceed in his absence with representation of counsel, the Commission's hearing examiner recommended fines and suspension of the Cannizzaros' licenses. The Commission rejected this recommendation and revoked their licenses, prompting these appeals.

The pivotal issue raised by both Cannizzaros is whether Section 9124(c)(1) of CHRIA empowered the Commission to revoke their real estate licenses for the commission of a felony. The Commission concedes that the applicable section of RELRA, Section 604(a)(14), as it was worded before its 1984 amendment, did not authorize the Commission to revoke a license because of a felony conviction.[1]

The Cannizzaros argue that Section 9124(c)(1) of CHRIA does not apply because of the principle of statutory construction that the specific language of Section 604(a)(14) of RELRA[2] must prevail over the more general language of Section 9124(c)(1) of CHRIA.[3] The Commission argues that

---

**1.** This Court held in *Gobao v. State Real Estate Commission*, 96 Pa.Commonwealth Ct. 341, 507 A.2d 917 (1986), that Section 604(a)(14) was intended to apply to crimes involving fraudulent practices and that the legislature did not intend it to apply to "any felony" until the 1984 amendment of the section to include that language. The issue of whether Section 9124 of CHRIA was applicable to the proceedings in *Gobao* was not addressed or decided therein.

**2.** That section, prior to its 1984 amendment, allowed the Commission to revoke or suspend the license of, or levy fines against, a licensee:

(14) Being convicted in a court of competent jurisdiction in this or any other state, or Federal court, of forgery, embezzlement, obtaining money under false pretenses, bribery, larceny, extortion, conspiracy to defraud, or any similar offense or offenses, or pleading guilty or nolo contendere to any such offense or offenses. Section 604(a)(14) of RELRA.

**3.** Section 9124(c)(1) of CHRIA provides, in pertinent part:

(c) **State action authorized.**—Boards, commissions or departments of the Commonwealth authorized to license, certify, register or permit the practice of trades, occupations or professions may refuse to grant or renew, or may suspend or revoke any license, certificate, registration or permit for the following causes:

(1) Where the applicant has been convicted of a felony.

because the two statutes cover essentially the same subject matter—the Commission's authority to discipline a licensee for a criminal offense—they should be read *in pari materia*, and, in accordance with 1 Pa.C.S. § 1932(b), be construed together.

In *Gangewere v. State Architects Licensure Board*, 98 Pa.Commonwealth Ct. 613, 512 A.2d 1301 (1986), this Court upheld the suspension of an architect's license for a felony conviction involving tax evasion. The Cannizzaros vehemently argue that *Gangewere* is distinguishable because the law governing the licensure of architects itself contained a provision allowing suspension of an architect's license for a felony conviction. Therefore, they contend, there was no conflict in *Gangewere* such as exists here.

However, we find that the two cases cited by the Cannizzaros in support of their argument are distinguishable. Both *Commonwealth v. Lawson*, 315 Pa.Superior Ct. 84, 461 A.2d 807 (1983) and *Commonwealth v. Bidner*, 282 Pa.Superior Ct. 100, 422 A.2d 847 (1981) involved criminal activities which fit within two different statutory definitions. In *Lawson*, the defendant was convicted of both retail theft and theft by unlawful taking. Although the conduct involved, theft of jewelry from a department store, fit within either statutory definition, the Superior Court held that the more specific provisions of the definition of retail theft should apply. Similarly, in *Bidner*, the question was whether the defendant's conduct in falsifying his address to obtain a court order allowing him to vote should fall under the general definition of perjury or that specifically relating to perjury in election matters. In both cases, a conflict existed because the defendant's acts fell squarely within two different definitions containing different penalty provisions. Because effect could not be given to both, the Superior Court applied the rule of 1 Pa. C.S. § 1933, concluding that the more specific provision should govern.

Here, we do not have an irreconcilable conflict between RELRA Section 604(a)(14) and CHRIA Section 9124(c)(1).

Rather, the two supplement each other, and may, in accordance with the mandate of 1 Pa.C.S. § 1933, be construed so that effect may be given to both. As we noted in *Gangewere:*

> It is true that Section 9124(c) of the Crimes Code does not by its own terms grant authority to the Board to suspend or revoke an architect's license. The Section applies only to boards, commissions and departments which are otherwise so authorized. However, *the plain language of the statute evinces the clear intention of the legislature to authorize licensing boards which have independent authority to suspend or revoke a license to do so for the conviction of a felony.*

*Id.,* 98 Pa.Commonwealth Ct. at 620, 512 A.2d at 1305 (emphasis added).

It is not disputed that the Commission here is empowered to revoke or suspend licenses. According to *Gangewere,* Section 9124(c)(1) operates to allow the Commission to exercise its powers of revocation or suspension where a licensee has been convicted of a felony. Were we to read that section as requiring a board to have independent authority both to suspend or revoke licenses *and* to have independent authority to do so in cases involving felony convictions, Section 9124 would be utterly superfluous.

The principles of statutory construction dictate against such a reading. As noted above, 1 Pa.C.S. § 1933 directs that conflicts between statutes should be construed in order to give effect to both, where possible. 1 Pa.C.S. § 1921(a) provides that every statute shall be construed so as to give effect to all of its provisions. 1 Pa.C.S. § 1922(2) instructs that the legislature is presumed to have intended to give effect to all provisions of a statute. Finally, as the Commission points out, statutes relating to the same persons or things are *in pari materia* and should be construed together. 1 Pa.C.S. § 1932. Accordingly, we conclude that the Commission was empowered to revoke the Cannizzaros' licenses under Section 9124(c)(1) of CHRIA.

■ The second issue we must address, raised by Anthony Cannizzaro, is whether the Commission erred in disregarding its hearing examiner's findings of fact and conclusions. Section 701 of RELRA, 63 P.S. § 455.701, provides, in relevant part, as follows:

(a) The said hearings may be held by the commission or any members thereof, or by any of its duly authorized representatives, or by any other person duly authorized by the commission for such purpose in any particular case.

(b) The commission *may adopt the findings* in the report *or may,* with or without additional testimony, either return the matter to the representative for such further consideration as the commission deems necessary or *make additional or other findings of fact* on the basis of all the legally probative evidence of the record *and enter its conclusions of law* and order in accordance with the requirements for the issuance of an adjudication under Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedure). (Emphasis added.)

■ From this statutory language, it is clear that the legislature intended the Commission to be the ultimate factfinder. In accordance with Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, our scope of review is thus limited to a determination of, *inter alia,* whether necessary findings of fact are supported by substantial, competent evidence. Here, Anthony Cannizzaro has not questioned the factual findings themselves, but merely the Commission's power to disregard the hearing examiner's more lenient recommendations. Clearly, the Commission has such power.

■ Anthony Cannizzaro next argues that the Commission's order is not supported by substantial evidence because the Commission made specific findings of fact regarding his good character. However, since we have determined that the Commission was empowered to revoke his license because of a felony conviction, we must necessarily

reject this argument and conclude that proof of the conviction itself [4] constitutes substantial evidence to support the Commission's findings.

■ Finally, John Cannizzaro argues that the penalty imposed by the Commission was excessively harsh. He argues that the revocation of his licenses deprives him of his livelihood for a crime of passion for which he has already been punished by the criminal justice system. Further, he contends that revocation was inappropriate because the Commission found that he enjoys a good reputation among personal and business acquaintances, and that he has had no previous criminal convictions nor was he ever involved in prior disciplinary proceedings involving his real estate licenses.

Despite its consideration of these mitigating factors, the Commission determined that revocation was warranted here because the criminal action at issue was perpetrated upon a *business* associate because of *business* dealings. While we recognize that this "business" dispute degenerated rapidly into a fight for family survival, we are constrained to defer to the discretion of the Commission. It is, of course, well established that we may not substitute our discretion for that of the Commission, absent a patently unreasonable exercise of judgment. *Pivirotto v. State Real Estate Commission*, 123 Pa.Commonwealth Ct. 452, 554 A.2d 179 (1989). Here, we cannot say that the penalty of revocation is patently unreasonable, particularly given the Commission's explanation that its decision ultimately turned upon the fact that underlying felony convictions were undeniably linked to the real estate business itself.

Having concluded that the Commission properly revoked the Cannizzaros' licenses, there is no need to address Anthony Cannizzaro's argument that he should be entitled to a stay pending appeal.

4. The record contains certified copies of Anthony Cannizzaro's criminal records, evidencing his conviction, and he makes no argument that the records are inaccurate.

The Commission's order is affirmed.[5]

## ORDER

AND NOW, this 6th day of October, 1989, the order of the State Real Estate Commission in the above-captioned matter is hereby affirmed.

---

5. As noted above, the Commission entered only one order, in which it revoked both Cannizzaros' licenses.