## Commonwealth v. Ngow

*Chris Phillips, assistant district attorney,* for the Commonwealth.

*James S. Bruno,* for defendant.

COHEN, P., *J.,* May 6, 1992—Defendant was found guilty following a bench trial before this court on November 1, 1991, of one count each of indecent assault, corruption of the morals of a minor, aggravated assault as a felony of the second degree, reckless endangerment, possession of an instrument of crime and conspiracy. Timely post-trial motions were filed and disposed of at time of sentencing.

On January 27, 1992, defendant was sentenced to a period of incarceration of 8 to 23 months to run concurrently on the charges of indecent assault (Bill no. 2027), aggravated assault (Bill no. 2029), and reckless endangerment (Bill no. 2032). A one-year period of probation consecutively was imposed on the charge of possession of an instrument of crime (Bill no. 2031), and there was no further imposition of sentence on the remaining bills.

This appeal was timely filed on February 7, 1992.

## BACKGROUND

The evidence presented at trial established the following: Marizol Comacho, a young Hispanic woman, testified that she and her boyfriend, Luis Ruiz, were walking on 5th Street in the Olney section of Philadelphia. A car containing the defendant and several other young Asian men pulled up alongside them. One called "Your girlfriend has a nice ass!" Comacho and Ruiz glanced over but kept walking. A total of five men piled out of the car. After asking both complainants for a cigarette, the five Asian males began to severely kick, punch and beat Mr. Ruiz with a baseball bat. At one point, the defendant broke away from the fight, laughed at Ms. Comacho, and grabbed her left breast, after which he rejoined the fray. The police arrived, the assailants fled. A car containing the defendant and most of the others was soon stopped and defendant was arrested.

Mr. Ruiz also testified. He was struck at least six times with the bat; the first grave blow struck him from the rear. He received several stitches, and assorted bumps and bruises. The police saw the beating in progress. The other defendants were juveniles who were tried separately. The defendant also testified. He claimed not to have participated in the fight, only to have gallantly pushed Ms. Comacho out of harm's way.

## ISSUES PRESENTED

On appeal, the defendant has raised the following issues:

(1) Sufficiency and weight of the evidence;

(2) Court error in ruling that a baseball bat was an instrument of crime.

## DISCUSSION

The issue before the court is whether the Commonwealth presented sufficient evidence to prove defendant's guilt beyond a reasonable doubt. To resolve this issue, the evidence must be viewed in the light most favorable to the Commonwealth as the verdict winner. Under this standard of review, all of the evidence which supports the verdict and all reasonable inferences capable of being drawn from the evidence which, if believed, could properly support the verdict must be accepted as true. *Commonwealth v. Brundidge,* 404 Pa. Super. 106, 590 A.2d 302 (1991).

The credible testimony of the Commonwealth witnesses was more than enough to withstand weight and sufficiency claims, and require no discussion.

The more interesting issue concerns the definition of instrument of crime. An instrument of crime is defined as follows:

"(1) Anything specially made or specially adapted for criminal use; or (2) anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. §907.

A review of the case law in this area is instructive. Under the statutory definition, a screwdriver may or may not be considered an instrument of crime depending on the circumstances under which it is used to commit a crime. For example, a screwdriver has been held not to be an instrument of crime where it is used as a weapon, *Commonwealth v. Eddowes,* 367 Pa. Super. 551, 580 A.2d 769 (1990), but has been deemed an instrument

of crime when used to perpetrate a burglary. *Commonwealth v. Turner,* 290 Pa. Super. 428, 434 A.2d 827 (1981). Similarly, a tire iron is not considered to be an instrument of crime when used as a weapon, *Commonwealth v. Cavanaugh,* 278 Pa. Super. 542, 420 A.2d 674 (1980), but is considered an instrument of crime when used to perpetrate a burglary. *Commonwealth v. Herman,* 227 Pa. Super. 326, 323 A.2d 228 (1974).

Where a knife is possessed with the intent to employ it criminally, it is considered to be an instrument of crime notwithstanding the fact that it may not have been specially made or specially adopted for criminal use. This is because knives are commonly used to perpetrate crimes. *Commonwealth v. Hall,* 304 Pa. Super. 489, 450 A.2d 1018 (1982).

Traditionally, a baseball bat has not been included as an instrument of crime. Thus, in the past, the courts have refused to include it on the sorry list of those items commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have. The understanding was that baseball bats were only used to attempt to propel small Haitian-made balls around the gloves of fielders. See e.g., *Commonwealth v. Senyszyn,* 266 Pa. Super. 480, 405 A.2d 535 (1979).

Unfortunately, the times they are a-changing. It is miserably apparent that young criminals have kept abreast of the law. After the enactment of the Mandatory Sentencing Laws in 1982, which required enhanced sentences for gun crimes, many of them took to roaming the streets packing a Louisville Slugger rather than a firearm. Much

as burglary tools, innocent items in themselves, are carried by burglars with the intent to break into others' property, so too are baseball bats being brought by groups of young men to corners and neighborhoods where they expect to meet youngsters of other gangs or races. They seek and expect confrontation. The results have been horrific.

The injuries inflicted with baseball bats are often more serious than those inflicted with more traditional weapons, because batters aim for the head, which travels slowly and rarely with much of a curve. The result is too often serious and permanent brain damage. Philadelphia has seen a dramatic upswing in the number of baseball bat-inflicted injuries, a phenomenon which has not gone unnoticed by the medical profession or the media. See Zucchino, *Baseball Bat Attacks Take a Terrible Swift Rise*, Phila. Inquirer, September 24, 1990 at A1. (Attached to this opinion as Exhibit I.) Emergency rooms in urban hospitals began to experience an upsurge in these injuries soon after the enactment of Mandatory Sentencing Laws in 1982.

A review of the case law in this Commonwealth bears this out: For the [46]-year period from 1935 to 1981 this court was able to find six cases which, in some manner, involved assaults committed with baseball bats. See *Commonwealth v. Andrews,* 466 Pa. 418, 353 A.2d 424 (1976); *Kline Township School Dist. v. McAloose,* 317 Pa. 266, 176 A. 435 (1935); *Commonwealth v. Gillespie,* 209 Pa. Super. 336, 434 A.2d 78 (1981). *Commonwealth v. Williams,* 273 Pa. Super. 144, 416 A.2d 1131 (1979); *Commonwealth v. Cooke,* 267 Pa. Super. 34, 405 A.2d 1290 (1979); *Commonwealth v. Zwierzelewski et al.,* 177 Pa. Super. 141, 110 A.2d 757 (1955).

For the next ten-year period, however, 1982 to the present, there were 20 reported cases which, in some aspect, involved assaults with baseball bats. See *FOP Lodge No. 5 et al. v. City of Phila.*, 526 Pa. 301, 586 A.2d 355 (1991); *Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835 (1989); *Commonwealth v. Terry*, 513 Pa. 381, 521 A.2d 398 (1987); *Commonwealth v. Mayfield*, 401 Pa. Super. 560, 585 A.2d 1069 (1991); *Commonwealth v. Fuller*, 396 Pa. Super. 605, 579 A.2d 879 (1990); *Commonwealth v. Ocasio*, 394 Pa. Super. 100, 574 A.2d 1165 (1990); *Commonwealth v. McBride*, 391 Pa. Super. 113, 570 A.2d 539 (1990); *Commonwealth v. Osteen*, 381 Pa. Super. 120, 552 A.2d 1124 (1989); *Commonwealth v. Maleno*, 348 Pa. Super. 426, 502 A.2d 617 (1985); *Commonwealth v. Rohach*, 344 Pa. Super. 229, 496 A.2d 395 (1982); *Cannizzaro v. Commonwealth, Dept. of State*, 129 Pa. Commw. 39, 564 A.2d 564 (1989); *Philadelphia Civil Service Commission v. Owens*, 125 Pa. Commw. 1, 556 A.2d 967 (1989); *Commonwealth v. Soto*, 22 Phila. 7 (1980). This is a significant increase.

Clearly, inclusion of baseball bats in the list of items "commonly used for criminal purposes..." is an idea that has come. The common use of a baseball bat has changed. Moreover, a baseball bat even more than a tire iron or screwdriver allows the fact finder to distinguish intended use based on the context. A screwdriver, knife or tire iron can be converted in an instant from household tool to weapon to burglary tool with very little change in the apparent circumstances. The appropriate context for lawful use of a bat, on the other hand, requires at the minimum a baseball and generally a few additional props

**604**

like gloves and diamonds. The circumstances surrounding the use of an item has long been a judgment which fact finders have been called upon to make. Therefore, the expansion of the definition is not likely to sweep many Little Leaguers into the mitt of the criminal justice system. It is not very difficult to establish that a person is attending or travelling to or from a ballfield. A court should not hesitate to reconsider precedent when the reasons supporting it no longer exist. Our system of law is a living organism designed to serve societal needs and not merely to preserve a static set of rules that are no longer in accord with the conditions of modern life. See *Estate of Grossman,* 486 Pa. 460, 406 A.2d 726 (1979). Therefore, the judgment of sentence should be affirmed.

## EXHIBIT I

PHILADELPHIA INQUIRER

Copyright Philadelphia Newspapers Inc. 1990.

DATE: Monday, September 24, 1990.

PAGE: A01—Edition Final.

SOURCE: By David Zucchino, Inquirer Staff Writer.

## BASEBALL BAT ATTACKS
## TAKE A TERRIBLE SWIFT RISE

The wounds were unusually nasty: crushed skulls, massive concussions, shattered cheekbones.

The weapon was ordinary: the smooth, solid, slugging object found in millions of American homes—the baseball bat.

At Albert Einstein Medical Center, the trauma-unit doctors wondered why more and more of their patients were

showing up badly bludgeoned. So they ran a study, which confirmed with hard numbers what they already suspected:

For people who deal and abuse drugs and turn to violence, an increasingly popular weapon of choice in Philadelphia is the always available and ever dependable baseball bat.

Drug dealers swing bats to punish competitors. Gangs wield them to drive off rivals. Husbands and wives, lovers and friends use them to finish off arguments, fueled usually by drugs and alcohol.

Cheap and legal, bats recently have joined guns and knives as favored weapons of assault in the city. A Louisville Slugger can inflict more damage than a knife or gun, mainly because in 80 percent of bat assaults studied the hitter aims for the head.

"Shooting or stabbing somebody is bad enough," said Stanton Carroll, who directs the trauma center at Einstein. "But if you beat the hell out of them with a baseball bat, you're inflicting mega-damage."

The Einstein study of baseball bat victims found that 70 percent of those tested turned up positive for drugs, alcohol or both.

"It was worse than we had thought." Carroll said. "It's here and it's true and it's evil."

A wooden bat costs as little as $8, a metal bat as little as $20. Carrying one requires no license. And as a tool to inflict severe pain and injury, a bat is one of the best weapons ever designed by man.

"It's the perfect club," said Donald Talenti, a trauma researcher at Einstein.

Some narcotic officers believe the bat's popularity is a belated response to counter a 1982 state law requiring a mandatory five-year prison term for violent crimes committed with a firearm. They say bats are particularly popular with drug dealers, who need an efficient weapon that will not attract undue police attention.

"They got cute," said Lt. Thomas Thompson of the Philadelphia Police Narcotics Field Unit. "Instead of shooting someone and facing five years, they beat them senseless with a baseball bat—and they don't get the (prison) time."

The Philadelphia office of the U.S. Drug Enforcement Administration says it is not uncommon for its agents to find bats littering the floor when they crash into a house on a drug bust. On the DEA's last two major busts in North Philadelphia this summer, agents stumbled across baseball bats. Just bats, no gloves or balls.

On Wednesday, 39 people were arrested in a DEA sweep and charged with taking part in a cocaine ring known as the Ramos Cocaine Organization in the city's Spring Garden section. The federal indictment charged that the alleged dealers used "supervised acts of violence" to drive off competing dealers.

The weapon of choice? Baseball bats.

The reason, according to one DEA agent who asked not to be identified, is that a baseball bat can be carried openly and legally.

"It doesn't become a weapon until you use it," the agent said. "You stop a guy with a bat and he says, 'I'm going to play ball.' You stop him with a butcher knife, and he can't say, 'I'm cutting meat.'"

The widespread use of bats is so well-known on the street that a false rumor spread among city teenagers this summer that stores had run out of bats, according to one school district official.

The Einstein doctors said they noticed a surge in baseball bat assaults in late 1988 after treating only an occasional bat victim in previous years. Carroll said trauma doctors at other city hospitals had told him that they had noticed a similar increase.

The rise in bat attacks mirrors a rise in the city for all types of assault, particularly shootings and knifings. At Einstein, for instance, assaults with guns or knives have increased from 175 in fiscal 1987 to 315 in the 12 months ending in June.

The Einstein study—"The Baseball Bat: A Popular Mechanism of Urban Injury"—looked at 36 patients admitted to the Einstein trauma center for severe baseball bat injuries during the first nine months of last year. Talenti said the rate so far this year was 20 percent higher, with five times as many patients treated for bat assaults but not admitted.

The month with the highest incidence of attacks is, not surprisingly, August, the height of the baseball season—Einstein admitted 10 bat victims last month. Two-thirds of the bat victims were beaten at home, and one-third on the street.

"They don't want to kill anybody, but they want to teach them a good lesson, so they reach for a bat," Talenti said of in-home beatings.

Carroll said two findings in the study surprised doctors at Einstein: The rapid increase in the incidence of bat attacks and the consistent severity of injury.

Carroll said baseball bat injuries are similar to those suffered by a motorist without a seat belt in a 50 mph car crash. While gunshot victims are more likely to die from their wounds, he said, bat victims can face more serious long-term injuries than shooting survivors.

With a shooting or stabbing, usually "you either die or you get better," Carroll said. But being bludgeoned with a baseball bat can cause such long-term afflictions as loss of eyesight, massive facial fractures, serious dental damage, limb paralysis and mental and psychological disorders.

Only one person in the bat study died of his injuries. But nearly 19 percent were left with "permanent severe disability," a higher rate than for gunshot or stabbing wounds, Talenti said. Almost half required surgery. Thirty-six percent were knocked unconscious.

Eighty-one percent of the patients suffered a head injury, which the study called "a departure from classic patterns of violent injury." As Talenti put it, "For some reason, people with bats go for the home run." A baseball bat's narrow handle and weighted barrel make an ideal clubbing weapon, said Talenti, a specialist in human physiology. And because attackers almost always use a lateral baseball swing—rather than raising the bat over the head like an ax—they take maximum advantage of the bat's design.

"If I had my druthers," Talenti said, "I'd rather get stabbed with a knife."