# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jasmine Williams,           :
          Petitioner       :
          :
      v.            :
          :
          :
Bureau of Professional       :
and Occupational Affairs,       :
State Real Estate Commission,     :    No. 1263 C.D. 2020
          Respondent      :    Submitted: September 20, 2021


BEFORE:     HONORABLE P. KEVIN BROBSON, President Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge (P)
                  HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: October 14, 2021


      Jasmine Williams (Petitioner) petitions for review from the November 18, 2020 Final Adjudication and Order (Final Adjudication) of the Bureau of Professional and Occupational Affairs, State Real Estate Commission (Commission), which suspended Petitioner's license to practice real estate for a period of one year, imposed a $3,000 civil penalty, and ordered Petitioner to complete a 14-hour continuing education course for new real estate licensees, pursuant to the provisions of the Real Estate Licensing and Registration Act (RELRA).[1] Upon review, we affirm.

---

[1] Act of February 19, 1980, P.L. 15, No. 9, *as amended*, 63 P.S. §§ 455.101-455.902.

Petitioner has held a license to practice as a real estate salesperson in the Commonwealth of Pennsylvania since July of 2009. *See* Hearing Examiner's Proposed Adjudication and Order filed December 17, 2019, Certified Record (C.R.) Item No. 27 (Proposed Adjudication), Findings of Fact (F.F.) 1-3.[2] At the time of the events in question in this litigation, Petitioner worked as a full-time real estate agent[3] for Elite Realty Group Unl Inc, a real estate brokerage registered with the Commission as "RE/MAX Elite." *See* F.F. 5-9.

In 2013, a real estate wholesaler[4] named James Fate presented to Petitioner a property located at 5909 Lansdowne Avenue, Philadelphia (Property), and inquired whether Petitioner had any buyers for the Property. *See* F.F. 10. At that time, Petitioner was unfamiliar with the process of real estate wholesaling. *See* F.F. 11.

Petitioner went to examine the Property, which was the abandoned shell of a rowhome, completely filled with furniture and trash, and which Petitioner did not believe to be structurally sound. *See* F.F. 13-14. The Property was owned by a woman named Paulette Adams (Owner) and had not been listed for sale at the time Petitioner inspected it. *See* F.F. 15. Petitioner did not enter into a contract with

---

[2] The Commission adopted and incorporated the Findings of Fact from the Proposed Adjudication distributed by the Hearing Examiner on December 17, 2019, Certified Record Item No. 27 (Proposed Adjudication). *See* Commission's Final Adjudication and Order dated November 18, 2020 (Final Adjudication) at 1-2.

[3] As a full-time real estate agent, Petitioner participated in approximately 40-60 real estate transactions annually. *See* Proposed Adjudication, Finding of Fact (F.F.) 9. Petitioner's employment as a real estate agent was her only source of income at all times relevant to this matter. *See id.*

[4] "A real estate wholesaler does not have a real estate license, but solicits home owners [sic] to see if they want to sell their properties, obtains a written assignment of contract or some type of equitable interest from the owner, [and] then acts as a middleman in a transaction to sell the wholesaler's interest in the property to a new buyer." F.F. 12.

2

Owner and did not act as her listing agent. *See* F.F. 16. Instead, Petitioner informed Petitioner's aunt, Marie Ballard (Aunt), who often engaged in wholesaling, that the Property was available. *See* F.F. 11 & 17.

Meanwhile, Henry M. Kidd (Kidd), a former maintenance worker, real estate dabbler, and family friend of Petitioner and Aunt, heard from a mutual friend of his and Aunt's that the Property was for sale. *See* F.F. 18-20. Kidd went to examine the Property and saw no "for sale" sign thereon. *See* F.F. 21. Upon further investigation, Kidd discovered that the interior of the Property was in a bad condition, with a hole in the roof that allowed rain to enter. *See* F.F. 22. Despite these defects, Kidd was interested in purchasing the Property. *See* F.F. 23.

Kidd and Petitioner began discussions regarding the purchase of the Property.[5] *See* F.F. 23-25. At their first meeting, Petitioner offered the Property for sale to Kidd for a price of $31,000. *See* F.F. 26. After Kidd counter-offered $18,000, Petitioner spoke to the Property's wholesaler, who agreed to the price. *See id.* Petitioner then informed Kidd that the $18,000 price was acceptable and instructed him to pay with a check made out in her name. *See* F.F. 27.

Kidd met Petitioner in person on January 11, 2013, and January 14, 2013, each time delivering a $5,000 check made out in Petitioner's name for a total of $10,000. *See* F.F. 28-30 & 32. At some point, because Petitioner had asked him to pay the full price up front, Kidd also obtained a third check from his bank for the $8,000 outstanding balance of the $18,000 Property purchase price. *See* F.F. 31. Kidd met Petitioner again at a restaurant on January 15, 2013, to deliver the final check for the outstanding balance of the purchase price. *See* F.F. 36. Kidd gave

_____

[5] The Proposed Adjudication does not state whether Aunt or the mutual friend of Kidd and Aunt originally connected Petitioner and Kidd to begin discussions regarding the sale of the Property. *See* F.F. 23-24.

Petitioner the $8,000 check as well as an additional $900 in cash, which Petitioner demanded without explanation, for a total of $18,900. *See* F.F. 38. Petitioner never placed any of the funds received from Kidd into an escrow account at RE/MAX.[6] *See* F.F. 38. Instead, Petitioner placed the funds into Aunt's non-escrow checking account. *See* F.F. 39.

Also at the January 15, 2013 meeting, Petitioner provided Kidd with a statement of Buyer's Estimated Total Closing Costs (BECC) and a Settlement Statement HUD-1 (HUD-1) that she had personally prepared regarding Kidd's purchase of the Property. *See* F.F. 33-35 & 37. The BECC had "RE/MAX Elite" printed in the upper left corner and Petitioner's RE/MAX email address printed in the upper right corner. *See* F.F. 40-41. The BECC further set forth a $1,500 commission to be paid by the buyer. *See* F.F. 40. The HUD-1 identified Petitioner as the settlement agent and Kidd as the buyer. *See* F.F. at 42-43. The HUD-1 also set forth commissions of $750 to be paid from seller's funds and $1,500 to be paid by buyer, although the typed $1,500 commission figure had been crossed out and replaced by a handwritten notation indicating a commission of only $1,000. *See* F.F. at 42.

The BECC and the HUD-1 were the first and only documents Petitioner provided Kidd regarding the transaction. *See* F.F. 37, 45-46 & 49-51. Petitioner never provided Kidd with a consumer notice, a seller's disclosure statement, or any written buyer agency contract or agreement indicating whether she would be representing him in the purchase of Property. *See* F.F. 45-46 & 49-51. Kidd never

---

[6] Michael Lisitsa was broker of record for RE/MAX Elite at the time. *See* F.F. 7 & 53. Neither Lisitsa nor RE/MAX Elite was ever involved in the sale of the Property in any way; they never listed or otherwise offered the Property for sale, never received any files or information regarding the transaction from Petitioner, and never received any deposits of any kind regarding the Property from Petitioner. *See* F.F. 53.

signed or received a deed for the Property, nor was he ever given any keys. *See* F.F. at 46.

Kidd's only contact in relation to the purchase of the Property was Petitioner, whom he assumed to be a realtor and the seller of the Property. *See* F.F. 47. Petitioner, however, considered her position to be simply that of a liaison between the Property's wholesaler and Kidd. *See* F.F. 49. Accordingly, she did not prepare a written buyer agency contract or agreement between herself and Kidd. *See id.* In fact, Petitioner did not even keep a file regarding the Property. *See* F.F. 52. Further, she did not provide Kidd with a property disclosure statement because she did not receive one from the Property's wholesaler. *See* F.F. 50.

Sometime in January or February of 2013, Kidd took the BECC and HUD-1 to his attorney, David Silverstein. *See* F.F. 54. Kidd explained to Attorney Silverstein that the BECC and the HUD-1 were the only documents Petitioner had given him and that she did not provide him with an agreement of sale, a seller's disclosure statement, any kind of consumer notice, or any documents indicating that Kidd had entered any kind of agency relationship with Petitioner. *See* F.F. 55. Attorney Silverstein contacted Petitioner and asked her to obtain a title search for the Property, which she accordingly obtained and provided. *See* F.F. 56-57. The title search revealed the Property was encumbered by multiple mortgages[7] that were liens on the Property. *See* F.F. 58. After reviewing the title report, on March 16, 2013, Attorney Silverstein sent Petitioner an email indicating that Kidd had elected to cancel the transaction because the seller could not provide clear and marketable

---

[7] The title search revealed at least two, and possibly three, mortgages on the Property. *See* F.F. 58.

5

title.  *See id.*  Attorney Silverstein also demanded the return of all payments previously made by Kidd on the Property.  *See id.*

In a series of emails that followed Attorney Silverstein's demand, Petitioner asserted that she used Kidd's payments to satisfy "the mortgage" and promised to return all of Kidd's money.  *See* F.F. 59-60.  Petitioner promised Attorney Silverstein that she would repay a portion of Kidd's money on Monday, March 25, 2013, and the balance following the completion of a real estate settlement scheduled for Friday, March 29, 2013.  *See* F.F. 60.  Petitioner did not make the promised payments, and only began returning the funds after Attorney Silverstein continually insisted that she return the money.  *See* F.F. 61.  By August 5, 2013, Petitioner had returned a total of $13,500 through a series of separate money orders. *See* F.F. 62.  When Petitioner did not refund the remaining money over the course of the following years, Attorney Silverstein filed a lawsuit in the Philadelphia County Court of Common Pleas on July 5, 2017, and obtained a default judgment against Petitioner for the outstanding $5,400 balance on January 17, 2018.  *See* F.F. 63.

Meanwhile, on August 1, 2017, the Commission initiated the instant action by filing an order to show cause alleging that Petitioner was subject to disciplinary action under RELRA in relation to her conduct surrounding the sale of the Property (Order to Show Cause).[8]  *See* Order to Show Cause, C.R. Item No. 1, at 1.  Specifically, the Order to Show Cause alleged that Petitioner was subject to discipline by the Commission pursuant to Section 604(a) of RELRA, 63 P.S. §

---

[8] The Order to Show Cause set forth 10 counts, the final 3 of which related to a separate real estate transaction from the one involving the Property.  *See* Order to Show Cause at 10-14; *see also* Proposed Adjudication at 1-2.  The Commission withdrew these counts and Count Five, which concerned record keeping, at the second hearing before the Hearing Examiner in this matter, which occurred on October 22, 2019.  *See* Proposed Adjudication at 2.

455.604(a),[9] by (1) engaging in conduct in a real estate transaction that demonstrated bad faith, dishonesty, untrustworthiness, or incompetency, in violation of Section 604(a)(20) of RELRA, 63 P.S. § 455.604(a)(20); (2) failing to prepare and present

---

[9] Section 604 of RELRA is entitled "Prohibited acts." *See* 63 P.S. § 455.604. In parts relevant to the instant litigation, this section provides as follows:

> (a) The [C]ommission may upon its own motion, and shall promptly upon the verified complaint in writing of any person setting forth a complaint under this section, ascertain the facts and, if warranted, hold a hearing for the suspension or revocation of a license or registration certificate or for the imposition of fines not exceeding $1,000, or both. The [C]ommission shall have power to refuse a license or registration certificate for cause or to suspend or revoke a license or registration certificate or to levy fines up to $1,000, or both, where the said license has been obtained by false representation, or by fraudulent act or conduct, or where a licensee or registrant, in performing or attempting to perform any of the acts mentioned herein, is found guilty of:
>
> . . . .
>
> (5.1) Failing to comply with any of the requirements of section 608.5[, 63 P.S. § 455.608e, regarding the handling of deposits and other escrows].
>
> . . . .
>
> (15) Violating any rule or regulation promulgated by the [C]ommission in the interest of the public and consistent with the provisions of this act.
>
> . . . .
>
> (20) Any conduct in a real estate transaction which demonstrates bad faith, dishonesty, untrustworthiness, or incompetency.
>
> (21) Performing any act for which an appropriate real estate license is required and is not currently in effect.

63 P.S. § 455.604(a)(5.1), (15), (20) & (21).

7

to Kidd a written buyer agency contract or agreement, in violation of Section 604(a)(15) of RELRA, 63 P.S. § 455.604(a)(15), and Section 35.281(a) of the Commission's Regulations, 49 Pa. Code § 35.281(a);[10] (3) failing to complete and present to Kidd a property disclosure statement for the Property or deliver one marked "refused," in violation of Section 604(a)(15) of RELRA, 63 P.S. § 455.604(a)(15), and Section 35.284a(b)(2) of the Commission's Regulations, 49 Pa. Code § 35.284a(b)(2);[11] (4) failing to present to Kidd a consumer notice, in violation of Section 604(a)(15) of RELRA, 63 P.S. § 455.604(a)(15), and Section 35.336(a) of the Commission's Regulations, 49 Pa. Code § 35.336(a);[12] (5) failing to pay over

---

[10] Section 35.281(a) of the Commission's Regulations, entitled "Putting contracts, commitments and agreements in writing," provides as follows:

> (a) All contracts, commitments and agreements between a broker, or a licensee employed by the broker, and a principal or a consumer who is required to pay a fee, commission or other valuable consideration shall be in writing and contain the information specified in § 35.331 (relating to written agreements generally).

49 Pa. Code § 35.281(a).

[11] Section 35.284a of the Commission's Regulations, entitled "Disclosures required by the Real Estate Seller Disclosure Law," provides, in pertinent part, as follows:

> (b) A licensee who represents buyers or a transaction licensee who has entered into an agreement with buyers shall:
>
> . . . .
>
> (2) Assure that the completed property disclosure statement or the property disclosure statement marked "refused" was delivered to the buyer prior to the execution of an agreement of sale.

49 Pa. Code § 35.284a(b)(2).

[12] Section 35.336(a) of the Commission's Regulations requires licensees to provide a consumer with the Consumer Notice at the initial interview between the consumer and the licensee.

8

funds received as a deposit or other escrow to the real estate broker who employed her, in violation of Section 608e(c) of RELRA, 63 P.S. § 455.608e(c);[13] and (6) acting as an unlicensed real estate broker in the sale of the Property, in violation of Section 604(a)(21) of RELRA, 63 P.S. § 455.604(a)(21). *See* Order to Show Cause at 2-10.

The Commission conducted a bifurcated hearing before a Hearing Examiner on August 27, 2019, and October 22, 2019.[14] *See* Proposed Adjudication at 1-2. On December 17, 2019, the Hearing Examiner distributed the Proposed Adjudication, which made findings of fact, conclusions of law, and recommended that Petitioner's real estate license be suspended for one year and that Petitioner be required to complete the Commission's 14-hour required course for licensees. *See* Proposed Adjudication, Proposed Order. The Hearing Examiner immediately stayed the recommended suspension in favor of one year of probation. *Id.*

The Commission issued a Notice of Intent to Review on December 23, 2019, and the parties filed briefs on exceptions in which the Commonwealth argued that the proposed sanctions were too lenient and Petitioner argued that the proposed sanctions were too harsh. *See* Final Adjudication at 1-2. On November 18, 2020, the Commission filed the Final Adjudication. The Commission adopted the findings

---

*See* 49 Pa. Code § 35.336(a) ("Licensees shall provide the consumer with the Consumer Notice at their initial interview.").

[13] Section 608e(c) of RELRA, added by the Act of July 6, 2009, P.L. 58, entitled "Handling of deposits and other escrows," requires every real estate salesperson to "promptly following receipt of a deposit or other escrow, pay over the funds to the broker employing the associate broker or salesperson." 63 P.S. § 455.608e(c).

[14] The hearing was bifurcated at Petitioner's request when she was unexpectedly unavailable to attend the hearing on August 27, 2019. *See* Proposed Adjudication at 2. Petitioner appeared and presented her defense on October 22, 2019. *See id.*

of fact and conclusions of law contained in the Proposed Adjudication, as well as the Hearing Examiner's discussion concerning the grounds for discipline, but declined to adopt the Hearing Examiner's discussion regarding the sanction to be imposed. *See* Final Adjudication at 2. The Commission found instead that the Hearing Examiner's proposed sanctions were too lenient given the severity of Petitioner's violations. *See id.* at 3-4. Instead, the Commission imposed a one-year active suspension and a $3,000 fine, and required Petitioner to complete the Commission's 14-hour continuing education course suggested by the Hearing Examiner as remedial continuing education. *See id.* at 3-4 & Final Order. Petitioner timely petitioned this Court for review.[15]

On review, Petitioner seeks to have her one-year active suspension reversed. *See* Petitioner's Br. at 10-14. She argues the penalty of a one-year active suspension is excessive and not reasonably related to furthering public safety and welfare where her errors involved only one transaction that occurred years prior to the implementation of formal charges. *See id.* We do not agree.

Initially, the Commission is charged with the responsibility of regulating the real estate profession in Pennsylvania. *See* 63 P.S. § 455.406(1).[16] In

---

[15] This Court's scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact were unsupported by substantial evidence. *See* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *see also Campo v. State Real Est. Comm'n*, 723 A.2d 260 (Pa. Cmwlth. 1999). An agency's adjudication is not in accordance with the law if it represents a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. *Slawek v. State Bd. of Med. Educ. & Licensure*, 586 A.2d 362 (Pa. 1991). An agency abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or exercises judgment that is manifestly unreasonable or is the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record. *Man O'War Racing Ass'n v. State Horse Racing Comm'n*, 250 A.2d 172 (Pa. 1969).

[16] Section 406 of RELRA, 63 P.S. § 455.406, states, in pertinent part:

10

matters concerning a professional real estate license, the Commission is the ultimate finder of fact. *See Cannizzaro v. Dep't of State, Bureau of Pro. & Occupational Affairs*, 564 A.2d 564 (Pa. Cmwlth. 1989). As the fact-finder, the Commission is the exclusive arbiter of conflicts in the evidence and credibility and is free to accept or reject the testimony of any witness, in whole or in part, even if it is uncontradicted. *See Barran v. State Bd. of Med.*, 670 A.2d 765 (Pa. Cmwlth. 1996); *Benford v. State Real Est. Comm'n*, 300 A.2d 922 (Pa. Cmwlth. 1973). If the Commission's findings are supported by substantial evidence, they are binding on appeal. *Cannizzaro.* Additionally, where substantial evidence supports a particular finding, it is irrelevant whether the record contains evidence that would support a contrary finding; the relevant inquiry is whether the record contains substantial evidence to support the findings actually made. *See Grabish v. Workmen's Comp. Appeal Bd. (Trueform Founds., Inc.)*, 453 A.2d 710 (Pa. Cmwlth. 1982). Further, we note that sanctions proposed by hearing examiners do not restrict the Commission's discretion in imposing more severe sanctions that are otherwise authorized under RELRA. *See Telang v. Bureau of Pro. & Occupational Affairs (State Bd. of Med.)*, 751 A.2d 1147 (Pa. 2000) (licensing board was authorized to impose an otherwise permissible sanction without regard to a hearing examiner's proposed sanction). While this Court has a duty to correct an abuse of discretion in the imposition of a penalty by

---

> The [C]ommission shall have the power and its duty shall be to administer and enforce the laws of the Commonwealth relating to:
>
> > (1) Those activities involving real estate for which licensing is required under this act and to instruct and require its agents to bring prosecutions for unauthorized and unlawful practice.

63 P.S. § 455.406.

the Commission, we will not substitute our own discretion for that of the Commission, absent a clearly unreasonable exercise of judgment by that administrative body. *See Shenk v. State Real Est. Comm'n*, 527 A.2d 629 (Pa. Cmwlth. 1987).

Here, after reviewing the evidence presented at the hearing, in addition to adopting the Hearing Examiner's findings of fact, the Commission found as follows:

> [Petitioner] became involved with a "wholesaler" transaction. [Petitioner] was not familiar with wholesaling of real estate. When a salesperson, who works under a broker, is not familiar with something regarding a real estate transaction, the salesperson should go to her broker for guidance on how to proceed. [Petitioner] never engaged her broker with the transaction. She received money, belonging to another, and did not deposit the money into her broker's account. Instead, she gave the money to her aunt, an unlicensed individual, to deposit the money into her aunt's bank account. Then, when the transaction [was] not consummated, [Petitioner] was unable to return the money to the buyer. These actions are egregious.

Final Adjudication at 2-3. Based on these findings and the Hearing Examiner's findings of fact summarized above and adopted by the Commission, the Commission agreed with the Commonwealth that the Hearing Examiner's proposed sanction was too lenient given the severity of Petitioner's violations. *See* Final Adjudication at 3. The Commission explained this determination as follows:

> A salesperson that takes money belonging to another and does not turn it over to the broker [for whom she works] for deposit is clearly incompetent. There is no situation in a real estate transaction where the salesperson, who is not

12

a seller or buyer, should take money from another and deposit [it] into someone's personal account. [Petitioner] also failed to give the required disclosures, such as the property disclosure statement and the consumer notice. The Commission agrees with the Commonwealth that [Petitioner] should serve an active suspension for at least one year. The Commission also agrees that remedial continuing education is necessary, however, the [H]earing [E]xaminer's proposal of taking the Commission[-]developed 14-hour continuing education course for new licensees is sufficient for that purpose. The Commission also believes that a civil penalty of $3,000.00 is necessary in this case to deter [Petitioner] and others from attempting to practice as a real estate broker without a license.

*Id.* at 3-4. The Commission continued:

The Commission finds that in order to fulfill its duty as protectorate of the public and to the integrity of the profession, it needs to send a clear message about the severity of [Petitioner's] violations – both to the citizens of the Commonwealth and to [Petitioner] herself. The Commission believes that an active suspension for at least one year of [Petitioner's] license, completion of the Commission[-]developed 14-hour continuing education course required for new licensees, and a civil penalty of $3,000.00 is appropriate in this case.

*Id.* at 4.

No part of the evidence presented in this matter requires that this Court overturn or otherwise disturb the Commission's conclusions or exercise of judgment. Petitioner herself does not challenge the RELRA violations alleged in the various counts of the Order to Show Cause. *See* Petitioner's Br. at 10-14. She merely argues that the one-year license suspension imposed by the Commission is unwarranted and unduly harsh given the facts of this case. *See id.* Specifically,

13

Petitioner argues the penalty imposed is overly harsh where the violations concerned only one transaction that occurred years in the past, Petitioner has not repeated the errors that occasioned her violations, and the active suspension would leave Petitioner without means to support her family. *See id.* Although Petitioner styles her arguments as challenging a purported abuse of discretion by the Commission, she is essentially asking this Court to reweigh the mitigating evidence and arguments she has adduced and presented. In short, Petitioner invites this Court to exceed its limited standard of review. We decline this invitation.

The facts of this matter illustrate that Petitioner acted as a broker in this real estate transaction despite not holding a broker's license. She failed to provide Kidd with basic, required paperwork to properly complete the sale of the Property. She deposited monies received not in her broker's escrow account, but in Aunt's personal account. We agree with the Commission that these admitted violations are egregious. The facts that the violations occurred years ago, that Petitioner repaid the funds out of her personal funds,[17] or that Petitioner will suffer financially if suspended as proposed, do not lessen these violations.

As the Commission acted within its statutory authority in imposing the sanctions herein, and nothing in the record indicates that the Commission's conclusions or imposition of penalties were manifestly unreasonable, the result of partiality, prejudice, bias or ill-will, or based on anything other than the Commission's sound discretion, Petitioner has failed to prove that the Commission abused its discretion by imposing the sanctions in this case. *See Pivirotto v. State Real Est. Comm'n*, 554 A.2d 179, 182 (Pa. Cmwlth. 1989) (the Commission did not

---

[17] We note that Petitioner's full repayment of Kidd's money occurred over the course of several years and required the prosecution of a lawsuit in the Philadelphia County Court of Common Pleas to complete.

14

abuse its discretion in revoking the license of a broker where the evidence showed the broker misused funds entrusted to him by investors, resulting in considerable financial loss to investors); *Pastorius v. Pa. Real Est. Comm'n*, 466 A.2d 780 (Pa. Cmwlth. 1983) (the Commission did not abuse its discretion in revoking the license of a broker where the evidence showed a commingling of an earnest money deposit with the broker's personal funds, a failure to return a down payment upon the termination of the real estate transaction, a failure to maintain escrow accounts, and a failure to produce such records for review by the Commission). Finding no clearly unreasonable exercise of judgment by the Commission, we may not disturb the Commission's determinations. *See Shenk*; *see also Man O'War Racing Ass'n v. State Horse Racing Comm'n*, 250 A.2d 172 (Pa. 1969).

For these reasons, we affirm the Final Adjudication.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jasmine Williams,               :
                    Petitioner  :
                                :
        v.                      :
                                :
                                :
Bureau of Professional          :
and Occupational Affairs,       :
State Real Estate Commission,   :    No. 1263 C.D. 2020
                    Respondent  :

## O R D E R

AND NOW, this 14th day of October, 2021, the November 18, 2020 Final Adjudication and Order of the Bureau of Professional and Occupational Affairs, State Real Estate Commission, is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge